UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| PROGRESSIVE RAIL, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:15-cv-00018-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CSX TRANSPORTATION, INC., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Progressive Rail, Inc. and Siemens Energy, Inc. brought separate actions, in separate

districts, seeking to recover for damages to electrical transformers they claim were sustained

during rail shipment by CSX Transportation, Inc. from Baltimore, Maryland, to Ghent,

Kentucky. Progressive filed its action against CSX in the Eastern District of Kentucky on April

1, 2015; Siemens filed its action against CSX in the District of Maryland on April 14, 2015.

Ultimately, Siemens's action was transferred to the Eastern District of Kentucky, and

consolidated into Progressive's action. Following consolidation, Siemens filed a Second

Amended Complaint. CSX now moves to dismiss that complaint. Additionally, Siemens filed a

motion to intervene in Progressive's action. For the following reasons, CSX's Motion to

Dismiss will be **GRANTED IN PART** and **DENIED IN PART**, and Siemens's Motion to

Intervene will be **DENIED**.

# I

Given the present context, the factual summary that follows is taken from the Siemens's

Second Amended Complaint [R. 52.] and construed in favor of the plaintiff. *See Crugher v.

Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (citation omitted). At some point prior to August

23, 2012, Gallatin Steel Company purchased two electrical transformers from Siemens. [*See* R. 52.] Siemens contracted with Kuehne + Nagel, Inc. (K+N), who contracted with Progressive, who contracted with CSX, for the shipment of the two transformers by rail from the Port of Baltimore to Ghent, Kentucky. [*See id.* at 2-3.] Progressive, having arranged the rail shipment of the transformers with CSX, issued a bill of lading for this shipment.[1] [*Id.* at 3.] The bill of lading listed Progressive Rail, Inc. as the shipper, and Gallatin Steel Company as the Consignee. [R. 53-2.] The bill of lading was not signed by Progressive, CSX, K+N, or Siemens, and it contained no terms or conditions or other boilerplate language. [*See id.*] Additionally, the area of the bill of lading dedicated to the declared value of the cargo was left blank. [*Id.*]

On or about August 23, 2012, the transformers, "in good order and condition, were delivered to CSX[T] at the port of Baltimore, Maryland for carriage to Siemens' customer Gallatin Steel Company in Ghent, Kentucky." [R. 52 at 2.] The transformers arrived in Ghent in a damaged condition. [*Id.* at 3.] "[T]he transformers' impact recorders indicat[ed] that the transformers had been subjected to g-forces greater than the maximum allowed for transportation by rail. . . ." [*Id.*] One of the transformers (Serial Number D147578) sustained damage to the extent it had to be "returned to Siemens [sic] manufacturing plant in Dresden, Germany where it was opened, inspected, repaired and subsequently returned to Gallatin Steel Company." [*Id.*] The other transformer (Serial Number D147579), although damaged, remained in the United States for later inspection and testing. [*See id.*] According to Siemens, it sustained losses estimated at approximately $1,555,824.60 for costs in transporting, inspecting, repairing, and

---

[1] The Court recognizes that there may be some dispute over who actually issued the bill of lading in this consolidated matter. However, in addressing this particular motion, the Court accepts as true the factual allegations of Siemens's Second Amended Complaint.

storing the transformers.  [*Id.* at 4-5.]  Within nine months of the transformers being damaged,

Siemens, pursuant to 49 U.S.C. § 11706(e), filed a written claim with CSX regarding the

damaged transformers.  [*Id.* at 4.]  CSX denied Siemens's claim on April 18, 2013.  [*Id.*]

Siemens first asserts a claim against CSX under the Carmack Amendment, 49 U.S.C. §

11706, alleging CSX, as the rail carrier, is liable to Siemens, as the owner of the transformers,

for the damage incurred by the transformers during rail shipment.  [*See generally* R. 52.]

Siemens also seems to assert state law claims of negligence and breach of duty as bailee against

CSX.  [*Id.* at 4.]  CSX moves to dismiss Siemens's Second Amended Complaint asserting

Siemens's lacks standing to bring a Carmack Amendment claim because Siemens was not named

in the bill of lading.  [R. 53.]  Additionally, CSX seeks to dismiss any state law claims Siemens

asserts in its Second Amended Complaint because any such claim is preempted by the Carmack

Amendment.  [*Id.*]

## II

The Federal Rules of Civil Procedure allow a defendant to seek dismissal of a complaint

which fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In

making such a motion, "[t]he defendant has the burden of showing that the plaintiff has failed to

state a claim for relief."  *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing

*Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)).  Federal Rule 8 requires only "a short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  However, to survive a motion to dismiss, the complaint "must contain either direct or

inferential allegations" establishing each material element required for recovery under some

actionable legal theory.  *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008)

(internal citation and quotation marks omitted).

When reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff." *DirecTV, Inc.*, 487 F.3d at 476 (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (citation omitted). Moreover, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, the facts that are pled must rise to the level of plausibility, not just possibility – "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *DirecTV, Inc.*, 487 F.3d at 476 (citing *Twombly*, 550 U.S. at 556). Thus, the plaintiff must at least "provide the grounds of his entitlement to relief, [which] requires more than labels and conclusions. . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

When ruling on a Rule 12(b)(6) motion, a district court generally may not consider matters presented outside the pleadings unless it converts the motion into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012). The district court, however, also has the discretion to ignore such evidence and resolve the motion solely on the basis of the pleadings. *Heinrich*, 668

F.3d at 405; *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 502-03 (6th Cir. 2006) (collecting cases). Certain matters beyond the allegations in the complaint such as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citations and internal quotation marks omitted). Additionally, the Sixth Circuit has held that when a *defendant* attaches undisputed documents to a motion to dismiss, they "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citations and internal quotation marks omitted).

## A

CSX first challenges whether Siemens has standing to bring its claim. [R. 53.] "Standing is a threshold question in every federal case," *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 915 (6th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Article III's "irreducible constitutional minimum" of standing has three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff must: (1) have suffered an 'injury-in-fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual an imminent, not conjectural and hypothetical;" (2) show that the injury is "fairly traceable to the challenged action of the defendant;" and (3) show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *White v. United States*, 601 F.3d 545, 551 (6th Cir. 2010) (quoting *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these three elements." *Lujan*, 504 U.S. at 561. Siemens's Second Amended Complaint addresses all three of the constitutional requirements. [*See* R. 52.]

CSX, however, does not challenge Siemens's constitutional standing, but rather asserts that Siemens lacks statutory standing to bring its Carmack claim. Where constitutional standing deals with the federal district courts' power to hear Article III cases and controversies, statutory standing looks to whether Congress, by statute, intentionally removed certain causes of actions from the realm of cases or controversies federal district courts normally hear. Relatedly, Congress did not remove cases concerning rail carrier liability from those Article III cases and controversies heard by lower federal courts.

In 1906, Congress enacted the Carmack Amendment, which "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce." *Exel, Inc. v. S. Refrigerated Transp. Inc.*, 807 F.3d 140, 148 (6th Cir. 2015). The purpose of the Carmack Amendment "is to relieve cargo owners of the burden of searching out a particular negligent carrier from the often numerous carriers handling an interstate shipment of goods." *Kawasaki Kisen Kaisha Ltd. V. Regal-Beloit Corp.*, 561 U.S. 89, 98 (2010) (internal citations omitted). Regarding rail carriers, the Carmack Amendment establishes, in relevant part:

> (a) A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation Board (STB)] under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the [STB] under this part are liable to the person entitled to recover under the receipt or bill of lading. . . . Failure to issue a receipt or bill of lading does not affect the liability of a rail carrier.

49 U.S.C. § 11706. Carmack further divides rail carriers into three classifications: (1) receiving rail carriers; (2) delivering rail carriers; and (3) connecting rail carriers. *Kawasaki Kisen Kaisha Ltd.*, 561 U.S. at 100. "A receiving rail carrier is one that provides transportation or service for property it receives for transportation. . . ." *Id.* (internal citations omitted). Carmack's statutory

6

language, then, requires a receiving rail carrier to issue a bill of lading for the cargo it receives for transportation. *See* 49 U.S.C. § 11706(a); *Kawasaki Kisen Kaisha Ltd.*, 561 U.S. at 100. The receiving rail carrier's failure to issue a Carmack-compliant bill of lading does not affect its Carmack liability. 49 U.S.C. § 11706(a).

A Carmack-compliant bill of lading is required when two conditions are met: (1) "the rail carrier must provide transportation or services subject to the jurisdiction of the STB"; and (2) "that carrier must receive the property for transportation under this part, where this part is the STB's jurisdiction over domestic rail transport." *Kawasaki Kisen Kaisha Ltd.*, 561 U.S. at 101. "Carmack thus requires the receiving rail carrier—but not the delivering or connecting rail carrier—to issue the bill of lading." *Id.*

Here, Siemens alleges that the transformers were delivered to CSX, as a rail carrier, at the Port of Baltimore on or about August 23, 2012. [R. 52 at 2.] Nothing in the pleadings suggests that CSX received the transformers from some other rail carrier. Therefore, construing the facts most favorable to Siemens, CSX is a "receiving rail carrier," as defined in *Kawasaki Kisen Kaisha Ltd. See* 561 U.S. at 100. Taking such facts as true, under the Carmack Amendment, CSX would have been required to issue the bill of lading regarding the transportation of the transformers. However, according to the Complaint, the only bill of lading in this case was issued by Progressive. [R. 52 at 2-3.] CSX, in its pleadings, never confirms that Progressive issued the bill of lading, but never denies as much either. CSX only states that it received the bill of lading from Progressive. [*See* R. 53-1 at 4, n.3.] That CSX failed to issue a bill of lading, if that is true, would not affect CSX's liability to "the person entitled to recover under the receipt or bill of lading." *See* 49 U.S.C. § 11706(a).

As stated, the only bill of lading identified in this case is alleged to have been issued by Progressive. [*See* R. 52 at 2-3; R. 54 at 8, n.8.] That bill of lading identified Gallatin Steel Company as the consignee of the transformers and Progressive Rail Inc. as the shipper of the transformers.[2] [R. 53-2.] CSX argues that because Siemens was not listed as the shipper on the bill of lading, Siemens does not have Carmack standing to bring suit against CSX. [R. 53.] Siemens asserts that regardless of whether Siemens is listed as the shipper on the bill of lading, it has Carmack standing because it is the true party in interest to the transformers. [*See* R. 54 at 4.] Additionally, Siemens states that because it acted through intermediaries, Progressive, a transportation broker, was an agent of Siemens as an undisclosed principal when Progressive contracted with CSX, thereby giving Siemens, not Progressive, standing to sue CSX. [*See* R. 54 at 5-6.]

As both parties note in their respective pleadings, the Sixth Circuit Court of Appeals has not had the opportunity to provide guidance on whether an owner of cargo not named on the bill of lading has standing to bring a Carmack Amendment claim against the carrier. As such, both parties cite to *OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092 (9th Cir. 2011), as supporting authority for their respective arguments.[3] In that case, OneBeacon was the insurer of

---

[2] Siemens did not attach the bill of lading to its Second Amended Complaint. CSX, however, included the bill of lading as an attachment to its Motion to Dismiss. [*See* R. 53; R. 53-2.] Because the bill of lading is mentioned in Siemens's Second Amended Complaint, and because it is central to Siemens's Carmack Amendment claim, the Court, in ruling on this motion, will consider the bill of lading provided by CSX. *See Amini*, 259 F.3d at 502.

[3] The parties also cite to four cases from district courts within the Sixth Circuit, each party claiming the cases support their respective positions. The parties debate the holdings from *Great West Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955 (S.D. Ohio 2009); *Consolidated Pipe & Supply, Co., Inc. v. Rowe Transfer, Inc.*, No. 3:11-CV-622, 2013 WL 6504744 (E.D. Tenn. Dec. 11, 2013); *Northrich Co. v. Grp. Transp. Servs., Inc.*, No. 1:13-CV-1161, 2015 WL 1291447 (N.D. Ohio Mar. 23, 2015); *Loves Express Trucking LLC v. Central Transport, LLC*, 14-14453, 2016 WL 4493674 (E.D. Mich. Aug. 26, 2016). All of these cases approach the issue of Carmack standing differently. Because there is no clear and consistent guidance from these district court cases, the Court opts not to provide them as much analysis as provided *OneBeacon*.

PPI, who purchased certain goods from Omneon. *OneBecaon*, 634 F.3d at 1095. "Omneon and PPI agreed that Omneon would ship the [cargo] FOB Omneon's dock. Therefore, ownership of the [cargo] had passed from Omneon to PPI when the shipment left Omneon's dock." *Id.* PPI authorized Omneon to coordinate the cargo's shipment through Omneon's frequently used carrier, Haas. *Id.* Omneon, who kept pre-printed Haas bill of lading forms on-hand, issued the bill of lading for the cargo. *Id.* "PPI did not sign the bill of lading, and Omneon did not indicate PPI's ownership of the goods identified on the bill of lading." *Id.* at 1096. However, the bill of lading itself contained Conditions of Contract Carriage, which defined the term "shipper" as "the party from whom shipment is received, the party who requested the shipment be transported by Haas Industries, and [sic] party having an interest in the shipment, and any party who acts as an agent for any of the above." *Id.* at 1095. One of the three pallets of cargo was lost in shipment. *Id.* at 1096.

Haas denied PPI's claim stating Omneon was the party entitled to file a claim. *Id.* Omneon then filed its claim, and Haas issued an $88 check claiming that fulfilled Haas's requirements because of the bill of lading's liability limitations. *Id.* As PPI's insurer, OneBeacon compensated PPI for the lost cargo, then "brought suit against Haas claiming that Haas is liable for the full value of the lost goods under the Carmack Amendment." *Id.* The trial court entered judgment in favor of Haas, and OneBeacon appealed. *Id.* In determining whether OneBeacon had standing to sue under the Carmack Amendment, the Ninth Circuit looked to the bill of lading and its terms. *Id.* at 1098. The Ninth Circuit found PPI to have standing to sue as PPI was a shipper under the terms of the bill of lading because it had an "interest in the shipment." *See id.* at 1099. As such, OneBeacon, as PPI's subrogee, had standing to sue Haas

under the Carmack Amendment. *Id.*

Siemens argues that the Ninth Circuit in *OneBeacon* applied a "broad (non-textual) interpretation" to the bill of lading's definition of "shipper," which included the "party having an interest in the shipment." [R. 54 at 11.] Siemens states PPI, and therefore OneBeacon, "conceptually met that classification by virtue of its ownership over the cargo." [*Id.*] Likewise, Siemens argues it "has an interest in the shipment, and a higher one than Progressive . . . because Siemens, not Progressive, has sustained the injury resulting from the damage to the transformers. . . ." [*Id.*] Alternatively, CSX argues that the *OneBeacon* court applied a "direct approach" to determining Carmack standing by looking to the terms of the bill of lading. [R. 53-1 at 10 (citing *OneBeacon*, 634 F.3d at 1098).] According to CSX, OneBeacon had standing as the cargo's owner "only because the bill of lading *stated* that the owner would be considered a shipper. In other words, standing was conferred, as a matter of contract law, within the four corners of the bill of lading." [*Id.* at 11 (emphasis in original).] CSX avers that because the bill of lading in the present case does not confer standing to Siemens, nor does the bill of lading include defined terms that by definition would confer standing to Siemens, Siemens lacks standing to bring a Carmack Amendment claim. [*Id.*]

Here, the bill of lading contained in the record does not contain any defined terms or conditions. [*See* R. 53-2.] Additionally, the bill of lading was not signed by Progressive, CSX, K+N, or Siemens. [*See id*.] Regardless of the type of approach *OneBeacon* took when deciphering the terms and conditions of a bill of lading, that approach is rendered useless when the bill of lading is void of such contractual terms and conditions. Because the bill of lading does not contain any terms whatsoever, the Court cannot follow *OneBeacon*'s guidance.

Returning, then, to the statutory language, which confers standing to a party "entitled to recover under the receipt or bill of lading," the Court finds nothing in the record restricting Siemens's ability to bring a Carmack claim. *See* 49 U.S.C. § 11706(a). A Carmack-compliant bill of lading, which would provide guidance as to which party or class of parties was "entitled to recover under the receipt or bill of lading," should have been issued by the receiving rail carrier of the transformers. *See Kawasaki Kisen Kaisha Ltd.*, 561 U.S. at 101. A receiving rail carrier is not relieved of liability by simply failing to issue a complaint bill of lading. *See* 49 U.S.C. § 11706(a). The Court does not weigh in on whether CSX or Progressive was the entity required to issue a Carmack-complaint bill of lading; however, the unrebutted facts as plead suggest CSX was the receiving rail carrier. [*See* R. 52 at 2.]

Construing the facts alleged in the Complaint as true, CSX did not issue a bill of lading. Assume, however, that as the receiving rail carrier CSX was statutorily required to issue the bill of lading. Because it did not, the Court cannot look to CSX's bill of lading to determine to whom it might have contractually conferred standing.[4] Additionally, under this hypothetical, CSX would not be relieved of liability simply because it did not issue the bill of lading. Looking to the record, then, nothing precludes Siemens from being a proper party entitled to recover under the nonexistent and hypothetical CSX bill of lading. Further, still assuming CSX was required to issue the Carmack-compliant bill of lading, looking to Progressive's bill of lading would be moot because Progressive was not the receiving rail carrier and, therefore, not statutorily required to issue a bill of lading. Therefore, Progressive could not statutorily bind the

---

[4] The hypothetical presented in this paragraph assumes Progressive, and not CSX, issued the bill of lading because the Court accepts as true the factual allegations of Siemens's Second Amended Complaint. *See DirecTV, Inc.*, 487 F.3d at 476.

11

parties in this regard.  Thus, considering the facts as plead in the light most favorable to Siemens, the Court finds Siemens has met the constitutional and statutory requirements to establish standing to bring a Carmack claim.  Consequently, the Court will deny CSX's motion to dismiss Siemens's Carmack Amendment claim.

**B**

CSX also moves to dismiss any state law claims asserted in Siemens's Second Amended Complaint arguing they are preempted by the Carmack Amendment.  [R. 53-1 at 22.]  Siemens seems to acknowledge that should the Court find Siemens has Carmack standing, its state law claims would be preempted.  [*See* R. 54 at 26-27.]  The Sixth Circuit has held that the Carmack Amendment preempts common law suits.  *See generally W.D. Lawson & Co. v. Penn. Cent. Co.*, 456 F.2d 419 (6th Cir. 1972).  Thus, the Carmack Amendment provides the sole remedy under which an entity may seek damages from a carrier regarding the interstate shipment of goods. Therefore, the Court will dismiss Siemens's negligence and breach of duty as bailee claims against CSX.

**C**

Finally, pursuant to F. R. Civ. P. 24(a)(2) and 19(a)(1)(B), Siemens filed a Motion to Intervene in Progressive's action claiming intervention is necessary to protect Siemens's interest in the damaged transformers.  [*See generally* R. 55-1.]  Siemens argues that Progressive "has not itself sustained a loss from the carriage of the transformers and the injury instead has been sustained by Siemens who owned the transformers at the time of the carriage."  [*Id.* at 4.] Siemens claims that Progressive is seeking compensation from CSX without acknowledging that it is representing Siemens's interest or that it is doing so for the benefit of Siemens.  [*Id.*]

Without the Court's protection, Siemens fears it will "be prejudiced in its ability to receive compensation for the damages to the transformer. . . ." [*Id.* at 5.] Both Progressive and CSX oppose intervention. [*See* R. 58; R. 59.]

Federal Rule of Civil Procedure 24(a) governs intervention of right. Rule 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." According to the Sixth Circuit,

> [t]he criteria that must be satisfied before intervention as of right will be granted are: (1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest absent intervention, and (4) inadequate representation of that interest by parties already before the court.

*United States v. Tennessee*, 260 F.3d 587, 591-92 (6th Cir. 2001) (citing (*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)).

Here, the first, second, and fourth considerations for intervention are not at issue. Siemens's Motion to Intervene is timely because it was made prior to any extensive progress being made in Progressive's component action. Siemens argues it has a substantial legal interest in Progressive's action because Siemens claims ownership of the damaged goods and is the only party who sustained injury regarding the damaged transformers. [R. 55-1 at 2, 5.] Siemens also argues that neither Progressive nor CSX are adequately representing Siemens's interest in Progressive's component action; instead, Siemens's argues, Progressive is seeking to unjustly enrich itself as Progressive sustained no injury related to the damaged transformers. [*See id.* at

13

4.] Thus, the only criterion at issue is whether, absent intervention, Siemens's ability to protect its interests would be impaired. Progressive and CSX argue that as a result of the Court's Order to consolidate the actions, Siemens's is already a party and can protect its own interests. [*See* R. 58 at 5-6; R. 59 at 2.]

On March 29, 2016, counsel for Progressive and CSX jointly moved to consolidate Eastern District of Kentucky Case No. 3:16-cv-00022 into Eastern District of Kentucky Case No. 3:15-cv-00018. [R. 13.] On November 10, 2016, the Court directed Siemens to show cause as to why its action, 3:16-cv-00022, should not be consolidated with Progressive's action, 3:15-cv-00018. [R. 26, EDKY Docket 3:16-cv-00022.] When Siemens did not respond to that Show Cause Order, the Court consolidated the actions. [R. 20.] As a result, both Siemens's claims and Progressive's claims survive consolidation. Additionally, as addressed earlier in this Order, the Court has denied CSX's Motion to Dismiss Siemens's Carmack Amendment claim. Consequently, the Court finds Siemens need not intervene in Progressive's component action in order to protect any substantial legal interest it may have. Thus, Siemens's Motion to Intervene will be denied.

### III

Accordingly, and for the aforementioned reasons, it is hereby **ORDERED** as follows:

1. Defendant CSX Transportation, Inc.'s Motion to Dismiss Siemens's Second Amended Complaint [**R. 53**] will be **GRANTED IN PART** and **DENIED IN PART;**

2. Defendant's Motion to Dismiss Siemens's Second Amended Complaint [**R. 53**] is hereby **DENIED** as to Siemens's Carmack Amendment claim;

3.      Defendant's Motion to Dismiss Siemens's Second Amended Complaint [**R. 53**] is hereby **GRANTED** as to Siemens's negligence and bailment claims; and

4.      Plaintiff Siemens's Motion to Intervene [**R. 55**] is hereby **DENIED.**

This the 28th day of March, 2018.

Gregory F. Van Tatenhove
United States District Judge