UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| SIEMENS ENERGY, INC. and PROGRESSIVE RAIL, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:15-cv-00018-GFVT |
| V. | ) ) | **MEMORANDUM** |
| | ) | **OPINION** |
| CSX TRANSPORTATION, INC., | ) ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on Defendant CSX Transportation, Inc.'s Motion for Entitlement to Attorneys' Fees and Bill of Costs.  [R. 112; R. 113.]  Plaintiff Siemens Energy, Inc. opposes the Motion, arguing that the language of the Blue Anchor Bill's Himalaya and Indemnity Clauses preclude CSXT from attorneys' fees.  For the reasons that follow, both of Defendant CSXT's Motions will be granted.

**I**

The factual background of this shipping and transportation case is long and detailed. Consequently, the Court's previous outline of the facts leading to Siemens' action for damages [R. 110] is incorporated by reference.  On March 10, 2020, this Court ruled on the parties' cross-motions for summary judgment, granting Defendant CSXT's Motion and denying Siemens'.  [R. 110.]  In the Order granting summary judgment, this Court found that (1) The Blue Anchor Bill, to which both CSXT and Siemens were a party, was a through bill, via the Himalaya Clause;[1] (2)

---

[1] A common means of shielding downstream carriers from liability.  [*See* R. 110 at 16–17.]

as such, the Bill's provisions were applicable to sub-contractors, such as CSXT; (3) one such provision was the unambiguously-drafted Covenant Not to Sue;[2] and (4) CSXT was therefore entitled to summary judgment as Siemens' claims were barred pursuant to the Covenant Not to Sue.  [R. 110.]  Siemens appealed the decision to the Sixth Circuit, maintaining that the Blue Anchor Bill was not a through bill and on other grounds.  [*See* R. 118.]  The Sixth Circuit affirmed this Court's decision and rejected Siemens' arguments.  [*Id.*]

Now, CSXT seeks an order recognizing its entitlement to attorneys' fees and costs based upon the Indemnity Clause found within the Blue Anchor Bill, as well as its prevailing party status.  [R. 112; R. 113.]  Siemens opposes the Motion for entitlement to attorneys' fees,[3] arguing for a narrow interpretation of the Bill, which would exclude CSXT from collecting attorneys' fees.  [R. 122.]

## II

## A

The principle that each party bear the costs of his or her own litigation expenses, including attorney's fees, is so entrenched in the justice system of this country that it has become known as the "American Rule." *Fox v. Vice*, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)).  A court may award attorneys' fees and costs, however, "where … the bill of lading provides for the award of attorney fees."  *Maersk Inc. v. Alan Marketing, Inc.*, 1998 WL 167323 at *3 (S.D.N.Y.  April  10,  1998); *see also Cross Equipment, Ltd. v. Hyundai Merchant Marine (America) Inc.*, 1999 WL 169433 at *1 (E.D. La. March 25, 1999).  In the

---

[2] Section 5.2(a) states that "[t]he Merchant [Siemens] undertakes: (a) that no claim or allegation shall be made against any Sub-Contractor [CSXT] whatsoever … which imposes or attempts to impose upon any Sub-Contractor any liability whatsoever in connection with the Goods or the Carriage of Goods …."  [R. 112-2 at 2.]
[3] Siemens has failed to respond to CSXT's Bill of Costs.

present case, CSX asks this Court to recognize an entitlement to attorneys' fees based upon the Indemnity Clause found within the Blue Anchor Bill that CSXT and Siemens are parties to as a sub-contractor and a merchant, respectively.

<strong>B</strong>

Here, the parties dispute the proper scope and interpretation of the Himalaya and Indemnity Clauses. Specifically, Siemens argues that a narrow interpretation of the Bill, which would exclude CSXT from collecting attorneys' fees, is proper. [R. 122.] Siemens, however, misconstrues the unambiguous terms of the contract.

This Court previously ruled that the Covenant Not to Sue within the Blue Anchor Bill extended to CSXT, as a sub-contractor, by way of the Himalaya Clause. [R. 110.] The Himalaya Clause, Section 5.3 of the Blue Anchor Bill, states that:

> [E]very Sub-Contractor [like CSXT] shall have the benefit of *all provisions herein benefitting the Carrier* … as if this sea waybill ... were expressly for its benefit and in entering into this contract the Carrier, to the extent of these provisions, does so not only on his own behalf but also as agent or trustee for such Sub-Contractor and such Sub-Contractor shall to this extent be or be deemed to be parties to this contract."

(emphasis added). In the previous Order, this Court found that the limited liability provisions within the contract were applicable to sub-contractors, such as CSXT. [R. 110 at 16.] Consequently, Siemens, as a merchant, was found to have improperly brought a claim against a subcontractor, CSXT, in violation of Section 5.2(a). [*Id.* at 17.] Here, the exact same section of the Bill, Section 5, is again put into question by Siemens.

The Indemnity Clause, Section 5.2(b) of the Blue Anchor Bill, states that "[t]he Merchant [Siemens] undertakes: … (b) if any claim or allegation should nevertheless be made against a Sub-Contractor [CSX], to Indemnify the Carrier against all consequences thereof." [R. 112-2 at

3

6.]  In the Bill, "Indemnify" is defined as to "defend, indemnify and hold harmless, including in respect of legal fees and costs …"  [*Id.*]  As CSXT notes, the exact same reasoning and contractual terms that this Court has previously discussed, as applied to the liability provisions, apply here.  The Supreme Court, in *Norfolk S. Ry. Co. v. Kirby*, instructed that maritime contracts "must be construed like any other contracts: by their terms and consistent with the intent of the parties."  543 U.S. 14, 16 (2004).  Thus, where the bill's terms are clear and unambiguous, those terms are to be given their plain and usual meaning.  *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008).  The Court will apply these well-established principles in interpreting the language of the relevant provisions concerning attorneys' fees.

Siemens argues that Sections 5.2(b) and 5.3, read *in pari materiae*, create a narrow set of circumstances in which CSXT would be able to recover attorneys' fees.  [R. 122.]  Specifically, Siemens asserts that indemnity would only be triggered where "(1) the Merchant (Siemens) [breaches] the covenant not to sue in Subsection 5.2(b); and (2) that breach [necessarily] inflict[s] one or more adverse consequences to the Carrier (BAL)."  [*Id.* at 5.]  Because BAL suffered no adverse consequences, Siemens explains, CSXT's claim for attorneys' fees falls outside the scope of the Indemnity Clause.  [*Id.*]  Siemens further argues that an award of attorneys' fees in the present case would improperly allow CSXT, a sub-contractor, to receive a greater benefit than the Carrier would receive if it had likewise been sued for a cargo damage claim.  [*Id.* at 8.]

Siemens, however, misconstrues the Himalaya Clause in its argument.  The Himalaya Clause clearly states that "every Sub-Contractor shall have the *benefit of all **provisions** herein benefitting the Carrier* …, as if this sea waybill … were expressly for its benefit."  [R. 112-2 at

4

6] (emphasis added).  Based on the plain language, the Clause extends to CSXT (a sub-contractor) all of the *provisions* benefitting the carrier, not the *actual* benefits that the carrier receives.  As Defendant notes, one such provision is the Indemnity Clause requiring a merchant to indemnify a carrier when the merchant breaches the covenant not to sue a sub-contractor.  [*Id.*] Siemens' reading of the Indemnity Clause would require this Court to: (1) ignore the language extending all "provisions" downstream; and (2) insert a condition precedent, namely, that sub-contractors receive the benefit of all benefits *first received* by the carrier.  Siemens' interpretations are simply inconsistent with a fair reading of the language and the terms used by the parties in the agreement.  *See Progressive Rail Inc. v. CSX Transportation, Inc.*, 981 F.3d 529, 532 (6th Cir. 2020) (citing *Kirby*, 543 U.S. at 22–23, 31).

Siemens' second argument is, likewise, not supported by the language of the Blue Anchor Bill.  Essentially, Siemens argues that because the Carrier would not have been entitled to attorneys' fees had Siemens sued the Carrier and lost, CSXT is not entitled to attorneys' fees under the Indemnity Clause.  [R. 122 at 1, 2, 8.]  Siemens bolsters its argument by imagining "all-encompassing" language that would entitle CSXT, as a sub-contractor, to attorneys' fees.  [*Id.* at 4.]  The Bill, however, clearly outlines specific circumstances wherein a sub-contractor, such as CSXT, is entitled to indemnification.  One such circumstance is triggered when a merchant improperly sues a sub-contractor.  [*See* 112-2 at 6.]  By previous Order of this Court, and as affirmed by the Sixth Circuit, Siemens improperly brought suit against CSXT in the present case.  [R. 110; R 118.]  As such, the language of the Bill requires Siemens to pay the attorneys fees and costs of the improperly sued CSXT.

**C**

Rule 54(d)(1) states, in relevant part, that "costs–other than attorney's fees–should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  This language creates a strong presumption that the prevailing party will recover its costs.  *Miles v. State of California*, 320 F.3d 986, 988 (9th Cir. 2003) (emphasis added); *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 462 (3d Cir. 2000); *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997).  The party seeking costs "bears the burden of establishing that the expenses he seeks to have taxed as costs are authorized by applicable federal law, including proof of necessity and reasonableness under 28 U.S.C. § 1920."  *Allen v. Highlands Hospital Corporation*, 2009 WL 1071811 at *2 (E.D. Ky. 2009).  Taxable expenses are contained in Title 28, United States Code Section 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987).  Section 1920 provides for recovery of:

> ...
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> ...

28 U.S.C. § 1920.  Relying on Rule 54(d)(1), CSXT filed an itemized bill of costs, requesting a total of $4,904.05.  [R. 113.]

**1**

CSXT requests $4,784.05 in fees for printed or electronically recorded transcripts of depositions necessarily obtained for use in the case, pursuant to 28 U.S.C. § 1920(2).  [R. 113 at

1.]  "A deposition taken within the proper bounds of discovery ... will normally be deemed to be 'necessarily obtained for use in the case,' and its costs will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged." *Allen v. Highlands Hospital Corporation*, 2009 WL 10711811 at *2 (E.D. Ky. 2009) (quoting *George R. Hall, Inc. v. Superior Trucking Co., Inc.*, 532 F. Supp. 985, 994 (N.D. Ga. 1982)). Here, Plaintiffs make no objections to Defendant CSXT's Bill of Costs.  Even so, CSXT attached several deposition transcripts, or portions thereof, as exhibits to its Motion for Summary Judgment, and the Court considered these depositions in making its decision.  [*See* R. 94.] Therefore, the Court finds that CSXT's depositions were necessarily obtained for use in the case.

Further, CSXT requests $120.00 for deposition exhibit copies.  [R. 113.]  Pursuant to 28 U.S.C. § 1920(4), fees for the costs of making copies are to be taxed only where those copies were "necessarily obtained for use in the case" and the burden is that of the party seeking reimbursement to show the necessity.  28 U.S.C § 1920(4); *King v. Gowdy*, 268 Fed.Appx. 389, 391 (6th Cir. 2008); *see also Charboneau v. Severn Trent Laboratories, Inc.*, 2006 WL 897131 at *2 (W.D. Mich. 2006).  Here, CSXT has noted its deposition exhibit copying expenses and included a corresponding invoice.  [R. 113 at 2.]  "Because deposition exhibits are routinely necessary to support summary judgment motions and at times prove useful at trial … as a general matter, the cost of copying deposition exhibits is taxable." *Ashland Hospital Corporation v. RLI Insurance Company*, 2015 WL 5063184 at *6 (E.D. Ky. 2015).  CSXT has properly identified the substance of its copies under § 1920(4) and, therefore, the Court finds that copying the exhibits was necessary for this case, and further finds that the $120.00 CSXT paid for that service entirely reasonable.

### III

Siemens is once again asking this Court to ignore the unambiguous terms of the applicable bill of lading.  The Court will not do so.  Just as CSXT was entitled to the protection of the Blue Anchor Bill's limited liability provisions, it is likewise entitled to enforce the Indemnity Clause therein.  Further, CSXT has sufficiently shown its entitlement to costs as the prevailing party.

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant CSXT's Motion for Entitlement to Attorneys' Fees [**R. 112**] is **GRANTED**;

2. Upon its request, Defendant CSXT shall have **thirty (30) days** from the date of this Order in order to submit a fee affidavit, briefing, and documentation supporting the amount of fees requested;

3. Plaintiffs shall have **fourteen (14) days** thereafter in order to submit a response;

4. Defendant will then have **seven (7) days** to submit a reply; and

5. Pursuant to 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d), **CSXT is awarded $4,904.05 in costs** as the prevailing party [**R. 113**].

This is the 17th day of March, 2021.



Gregory F. Van Tatenhove
United States District Judge